## LICCIARDI v. THE STATE OF OHIO.

*Criminal law—Intoxicating liquors—Sufficiency of affidavit—
Venue charged and signature in foreign language—Evidence—Parol testimony to establish official character—Immunity of officer and informant from prosecution—Section 6212-27, General Code—Officer joining in crime for purpose of detection, not punishable.*

1. The venue in a prosecution under the prohibition laws is sufficiently charged to sustain a conviction for both possessing and furnishing intoxicating liquor where the affidavit sets forth that the defendant possessed the liquor in Williams county, Ohio, and furnished it to the affiant in the village of Bryan, as the court will take judicial notice that the village of Bryan is in Williams county.

2. An affidavit in a criminal prosecution is not made defective by the fact that the affiant's signature is written in the Syrian language.

3. In a prosecution for violating the prohibition laws the defendant's official character, as a secret service inspector in the employ of the state, engaged in the enforcement of the prohibition laws, may be shown by parol testimony.

4. Under a plea of not guilty a defendant may introduce evidence tending to show that he did not do the acts charged against him and also evidence tending to show that he is entitled to immunity from prosecution for whatever he did do on the occasion charged.

5. By virtue of the provisions of Section 6212-27, General Code, as amended 109 Ohio Laws, 6, one who in good faith communicates information to a special prohibition inspector, giving facts relating to the violation of the prohibition laws at a certain time and place, is entitled to immunity from prosecution for the part he took in the transaction.

6. A detective who joins with others in the commission of a crime for the purpose of securing their arrest and conviction is merely a feigned accomplice, and is not subject to punishment even although he so far co-operated as to be guilty had his intention been the same as theirs.

(Decided February 25, 1924.)

ERROR: Court of Appeals for Williams county.

*Mr. James A. White; Mr. Charles M. Earhart; Mr. Charles T. Stahl* and *Mr. Roy C. Dague,* for plaintiff in error.
*Mr. W. H. Shinn,* prosecuting attorney, and *Mr. A. L. Gebhard,* for defendant in error.

RICHARDS, J. B. J. Licciardi was convicted be-fore a justice of the peace on an affidavit charging the unlawful possession, transportation and fur-nishing of intoxicating liquor to one George Isaac, and was sentenced to pay a fine of $700. The judgment of conviction was affirmed in the Court of Common Pleas, and this proceeding in error is brought to secure a reversal of the judgments. A very great many errors are claimed to have oc-curred which require a reversal, and these will be disposed of in order.

It is urged that the affidavit is defective in fail-ing to properly charge venue. The affidavit charges in substance that Licciardi on or about March 26, 1922, in the county of Williams, did unlawfully have and possess a quantity of intoxi-cating liquor, to-wit, whiskey, and that he brought the whiskey into the house of the affiant in the village of Bryan, Ohio, and then and there gave to the affiant a drink of said whiskey. We think the affidavit sufficiently charges venue. It charges that the defendant possessed the intoxicating liq-uor in Williams county, so that as far as charging possession is concerned it is amply sufficient, and while it does not specifically charge that the vil-lage of Bryan, where the liquor was furnished to the affiant, is in Williams county, that is a well-

known geographical fact of which this court will take judicial notice. 15 Ruling Case Law, 1083; 16 Corpus Juris, 515.

It is further urged that the affidavit charges in one count two or more offenses, and that the magistrate erred in refusing to require the state to elect on which offense it would proceed. The record leaves no doubt but that it was all one transaction, and we discover no prejudicial error in overruling the motion of the defendant to require the state to elect.

Counsel for the defense argue that the affidavit is unsigned, or, if signed, that the signature is insufficient. In the space which was left blank at the end of the printed affidavit there are a half dozen irregular curved characters, interspersed with four dots, all of which, to one who can read English only, are meaningless. Below these characters the words "George Isaac" are typewritten. The evidence shows that George Isaac, who is the prosecuting witness, is a Syrian, born in Damascus, and that the characters and dots described constitute his signature in Syrian, and the justice of the peace before whom the affidavit was taken certifies that it was sworn to and subscribed before him. We hold the affidavit is not defective in this respect.

Almost innumerable objections were made by the state to the introduction of evidence offered by the defendant, and these objections were nearly all sustained and the evidence excluded to the prejudice of Licciardi, as he claims. It will not be practicable to consider in detail each of these assignments of error, but the more important ones

will be disposed of and indication given as to the competency of excluded evidence.

The defendant, when arraigned, pleaded not guilty, and in his evidence denied that he had performed the acts charged against him in the complaint, and claimed that for whatever he did do he was entitled to immunity. This claim to immunity was based on the contention that on the occasion set forth in the affidavit he had been appointed and was acting as a secret service inspector in the employ of the state, engaged in the enforcement of the prohibition laws. In support of this contention counsel sought to show that he had been appointed to such position and was engaged in the performance of the duties of the office under the direction of V. A. Schreiber, who was a special prohibition inspector for the state. The justice of the peace repeatedly excluded offers of oral testimony coming from the defendant himself, and from Mr. Schreiber, and from Don V. Parker, who was commissioner of prohibition for the state of Ohio at the time charged in the affidavit. The justice of the peace held that the facts showing the appointment of B. J. Licciardi, of V. A. Schreiber, and of Don V. Parker himself, could only be shown by the record. The exclusion of the testimony of Licciardi and Schreiber along this line made it necessary for the defendant to bring to the trial the commissioner of prohibition, Mr. Parker, and to produce and identify the record of the appointment of Mr. Parker by the Governor of the state. If the position of the justice of the peace was correct, it is difficult to see why he did not also require the defendant to produce a certificate of election of the Governor of Ohio, for his act in appointing Mr. Parker would of course be

nugatory unless the commission was signed by one who was duly elected and acting as Governor.

If this method of procedure were required in the trial of lawsuits it would be impossible to dispose of the mass of litigation which arises. It is not and never has been a rule of law that the written appointment of a person must be introduced in evidence in order to show that he is a given officer or acting as such. Indeed it would have been sufficient to show that Licciardi and Schreiber were holding the offices they claimed to fill and acting in the capacity in which they claimed to act. As is stated in the second edition of Jones on Evidence, Section 205, public convenience requires that parol evidence should be allowed to prove that public officers are such officers. In the great majority of criminal cases officials are called to testify, and are universally permitted to give oral testimony as to offices which they hold and the duties which they perform, and that rule should have been applied in this case.

Much evidence offered by the defendant for the purpose of showing ill feeling on the part of the prosecuting witness toward Licciardi was excluded. All of this evidence was competent for the light that it shed on the credibility of the prosecuting witness, Isaac. He had been several times arrested and prosecuted for violation of the prohibition laws. The defendant sought in many ways to show that he himself had been very active in the prosecution of Isaac and that Isaac knew of that fact before the affidavit in the present case was filed. Licciardi offered to prove that Isaac had told different persons that he would get Licciardi because of Licciardi's activity in prosecuting him.

The prosecuting witness and his daughter were
the only witnesses for the state, and this matter
of credibility became one of extreme importance.
Isaac testified that he had no whiskey at his home
on March 26, 1922, and yet, after much hesitation,
the magistrate permitted the introduction of a
record in the probate court of Williams county in
which it appears that he plead guilty to a charge
that he had sold intoxicating liquor to Licciardi on
or about March 26, 1922. The magistrate's objec-
tion to this record was that it did not charge spe-
cifically that the sale was on the 26th day of
March; but if there was any uncertainty as to the
date it would be a matter for Isaac to explain in
rebutting the effect of the record. It is of course
well known that affidavits ordinarily charge the
commission of an offense as being on or about a
certain date, and indeed that is the form of the
affidavit in the case in which Licciardi is now be-
ing prosecuted. The record unexplained, showing
a plea of guilty by Isaac, is, of course, a complete
impeachment of his oral statement. Wide latitude
should have been allowed to the defense in offer-
ing evidence bearing upon the credibility of Isaac,
and in this connection it appears that the com-
plaint in the present case was not filed by Isaac
until about a year after the offense charged and
not until after Licciardi had been active in prose-
cuting him on various criminal charges.

Licciardi undertook to testify to a telephone con-
versation which he declared he heard while he was
at the residence of Isaac. He claimed to have
been near the telephone at the time of the conver-
sation and that he heard all of the conversation,
both that in the house of Isaac and that at the

other end of the line. On making this statement he was promptly told by the magistrate that he was a liar. We think all who have had much experience in using a telephone and in standing by one when others have been using it, are aware of the fact that under favorable circumstances one who is standing by the receiver may sometimes hear what is said at the other end of the line, and it may be proper to state that while this court was considering this case one member of the court had occasion to use the telephone, and the other members of the court, standing nearby, could hear distinctly what was said at the other end of the line. Whether Licciardi heard the conversation occurring at the other end of the line, as he sought to testify, was a question of fact, and, to say the least, it was unseemly that he, while testifying under oath as a witness, should be charged with being a liar by a judicial officer whose duty it was to decide the case. The lamentable fact is that on various other occasions the magistrate interrupted the witness and asked if he was lying.

The defense sought to show that the intoxicating liquor which Licciardi claimed to have bought of Isaac on the occasion charged in the affidavit had been labeled and taken to the probate court, where the prosecution of Isaac was commenced, and left for the purpose of being used as evidence against Isaac, and that it was the basis of the charge on which Isaac was prosecuted and to which he later plead guilty. This testimony was clearly competent and should have been received.

The state insists that it is inconsistent for Licciardi to deny the charge made in the affidavit, and at the same time to rely on immunity from

prosecution on that charge. His plea of not guilty necessarily put in issue all the facts charged in the affidavit and entitled him to introduce any exculpatory evidence which he might have. He might well take the position, as he did, that he did not do the acts charged in the affidavit, but that, if the evidence offered on behalf of the state should convince the magistrate that he had done those acts, then he was entitled to immunity from prosecution therefor. We find no inconsistency in these defenses.

Much evidence offered by the defense, tending to show that Licciardi was serving as a secret service inspector, and was reporting to his superior officer, Mr. Schreiber, and was therefore entitled to immunity, was excluded. All of that evidence was clearly competent for the purpose for which it was offered.

This immunity was claimed both under the statute and under the common law, based on the fact that the defendant claimed he was engaged in the performance of his duty as a secret service investigator on the occasion charged in the affidavit. We quote from Section 6212-27, General Code, as amended in 109 Ohio Laws, 6, so much as is pertinent to this question:

"The said commissioner, his deputy and inspectors shall each have authority to administer oaths and examine any person, or persons, whom they may know to have knowledge of any violations of laws relating to intoxicating liquor * * *. Such witness or person so examined shall not be subject to prosecution for violation of the laws relating to intoxicating liquor as to any matter disclosed by his statement or testimony."

The statute from which the quotation has been made authorizes a commissioner, his deputy or inspector, to administer an oath, but he is not required to do so and may examine such person without the administration of an oath. By virtue of the provisions of this section, if Licciardi in good faith communicated information to V. A. Schreiber, a special prohibition inspector, giving facts relating to the violation of the prohibition laws at the home of George Isaac on March 26, 1922, he would be entitled to immunity from prosecution for the part he took in the transactions which occurred at that home.

He also claims to be entitled to immunity from prosecution by reason of the common law. Generally speaking, there can be no crime without an evil intent, and this rule is well stated in 1 Bishop on Criminal Law (9 Ed.), Section 287, as follows:

"There can be no crime, large or small, without an evil mind. In other words, punishment is the sequence of wickedness. * * * It is therefore a principle of our legal system, as probably it is of every other, that the essence of an offense is the wrongful intent, without which it cannot exist."

The cases in Ohio on the subject of immunity under the common law are not numerous, but one directly in point is *Backenstoe* v. *State,* 19 C. C., 568, a decision which has stood unquestioned for nearly a quarter of a century. That case holds that one who encourages or counsels persons about to commit a crime to do so in order that they may be discovered and punished is merely a feigned accomplice and is not guilty if he acted in good faith, honestly intending that they should be dis-

covered and punished. To the same effect is *Price v. People*, 109 Ill., 109.

The principle of immunity from prosecution under the common law is well stated in 1 McClain on Criminal Law, Section 117, in the following language:

"Another illustration of the doctrine that the intent determines criminality is found in the rule that a detective who joins with persons in the commission of a crime for the purpose of securing their arrest and conviction is not punishable, al-though he so far co-operates as to be guilty if his intention had been the same as theirs."

The doctrine thus stated is followed in *State* v. *Torphy*, 78 Mo. App., 206.

These authorities, and others of like import, apply concretely the principles stated in Bishop on Criminal Law already quoted. The magistrate in the trial of Licciardi brushed aside as immaterial and unworthy of consideration testimony which was offered tending to show immunity, and in so doing committed prejudicial error.

A careful reading of the evidence in this case convinces the court that the judgment is clearly and manifestly against the weight of the evidence. Indeed it is so clearly against the weight of the evidence that we quote with approval from *Backenstoe* v. *State, supra,* the following:

"The case is almost without a precedent, and so strange does it seem upon the facts that Backenstoe could have been indicted and convicted, and sentenced, as to induce us to doubt the evidence of our senses and to read the record a second time."

That statement, with the name of "Backenstoe"

changed to "Licciardi," accurately states the condition of the case at bar.

The provisions of the Constitution of the United States and of the Constitution of Ohio relating to intoxicating liquors, and the laws enacted pursuant thereto, are a part of the law of the land and entitled to the same respect and obedience as any other part of the fundamental law. Those provisions must be administered by the court just as impartially and fearlessly as any other laws. That cannot be done by throwing obstructions in the way of their enforcement. Whoever encourages disrespect and disobedience of law, or belittles efforts to secure evidence for its enforcement, as was done by the magistrate on the trial of this case, invites anarchy.

*Judgments reversed and cause remanded for further proceedings.*

CHITTENDEN and KINKADE, JJ., concur.