DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Cleon Burkhalter, appeals the judgment of the Lucas County Court of Common Pleas which, after a jury trial, convicted him of failure to comply with an order or signal of a police officer, a felony of the third degree and a violation of R.C. 2921.331(B) and (C)(5)(a)(ii), and escape, a felony of the third degree and a violation of R.C. 2921.34(A)(1) and (C)(2)(b). After his convictions, appellant was sentenced to terms of two years in prison for each count. He was also sentenced to additional terms of two years for violating community control sanctions for a prior conviction of failure to comply and 11 months for a prior conviction of receipt of stolen property. All terms were ordered to run consecutively for a total term of incarceration of six years and 11 months. He was ordered to pay all applicable costs of confinement, assigned counsel, and prosecution after his ability to pay was determined. Appellant's driver's license was also suspended for three years. For the following reasons, we affirm the judgment and sentence.
 {¶ 2} On August 28, 2004, Officer Dellabonna of the Holland, Ohio, police force was stationed in a marked police vehicle on Angola Road between Holland-Sylvania Road and McCord Road. He noted a car, described as a blue minivan, apparently speeding, directed his radar device at the vehicle, and determined that it was traveling 53 miles per hour in a 35 mile per hour zone. Dellabonna began to follow the vehicle and activated his lights and gave "siren bursts," indicating to the driver to stop and pull the vehicle over.
 {¶ 3} The van did not pull over; instead, it entered a strip mall at the intersection of Holland-Sylvania and Angola Roads, stopped in the parking lot and a female passenger exited the vehicle. Dellabonna estimated the van's speed in the parking lot to be between 45 to 50 miles per hour. After stopping to briefly instruct the woman to stay where she was, he followed the van from the parking lot and activated his siren.
 {¶ 4} Dellabonna testified that he contacted the Lucas County Sheriff's Department, and continued to pursue the van at a high rate of speed. The parties dispute whether the van was traveling at speeds in excess of 80 miles per hour or whether that was only the speed which Dellabonna found necessary to catch the vehicle. The van turned east onto Nebraska Avenue, stopped briefly, and another female passenger exited the van. Still followed by Dellabonna, the van then turned north onto Reynolds Road. Dellabonna testified that he did not "run" the van's license plates to ascertain the driver's identity or whether the driver had outstanding warrants.
 {¶ 5} The high-speed pursuit of the van lasted about three to four minutes in Dellabonna's estimation. The van turned into a residential street, the driver lost control of the van and it went over the curb and into a private front lawn. While the van was still rolling forward, the driver jumped out and sprinted away. Dellabonna gave chase on foot after drawing his weapon. He testified that he periodically lost sight of the driver, but he eventually found him hiding in a flower bed behind a house. Dellabonna justified drawing his gun and pointing it at the driver by stating that he feared for his own safety. After taking the driver into custody, he located the second passenger, later determined to be a juvenile, and transported both the passenger and the driver to the Holland police station.
 {¶ 6} After arriving at the station, Dellabonna seated both the driver and passenger in the main office area, and began to write unspecified "citations." A second officer, Nachtrab, joined Dellabonna, and they decided to move the suspects to a more secure room. Dellabonna noticed that the driver had somehow transferred his handcuffs from behind his back to the front of his body. The driver was recuffed and left unsupervised in another room.
 {¶ 7} A few minutes later, Dellabonna and Nachtrab checked the room and found it empty. Apparently, appellant had stood on his chair, opened a window, and left the building into the station's front yard. Searches were fruitless.
 {¶ 8} A few weeks later, Dellabonna was contacted by the Sylvania Police Department and advised that they had in custody a person matching the description of the driver of the van. Dellabonna went to Sylvania and identified appellant as the driver of the van while appellant was in a holding cell. Appellant has maintained throughout this matter that he was not the driver of the van. Dellabonna testified that he identified appellant as the driver of the van in part because of a distinctive tattoo on the back of the driver's neck which matched appellant's tattoo.
 {¶ 9} Appellant raises the following four assignments of error:
 {¶ 10} "I. Appellant's conviction was against the manifest weight of the evidence because the record does not support his convictions. The state failed to prove at least one essential element of the crime.
 {¶ 11} "II. The trial court erred in not granting appellant's motion pursuant to Crim.R. 29. The state failed to provide evidence regarding where the traffic offense occurred which is an essential element of the crime as charged.
 {¶ 12} "III. Appellant's Sixth Amendment constitutional rights were violated and/or the evidence was legally insufficient to support the trial court's decision to not sentence appellant at the shortest term authorized.
 {¶ 13} "IV. The prosecutor's closing arguments were improper and prejudicially impacted appellant's substantial rights."
 {¶ 14} Because they raise similar issues and because appellant utilizes similar arguments in his brief, appellant's first and second assignments of error will be addressed jointly. First, appellant argues that his convictions were against the manifest weight of the evidence because the state failed to establish that Dellabonna was within his jurisdictional limits when initiating pursuit of the van as required by R.C.2935.03(D)(2). A conviction will only be reversed as against the manifest weight of the evidence if "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, superceded by constitutional amendment on other grounds as stated in State v.Smith (1997), 80 Ohio St.3d 89. The appellate court functions essentially as a "thirteenth juror" and may disagree with the factfinder's resolution of the testimony. Id. This power should only be exercised in exceptional cases where the evidence "weighs heavily against conviction." Id.
 {¶ 15} Second, appellant raises error with the trial court's denial of his Crim.R. 29 motion. On appeal, "[t]he relevant inquiry for reviewing the denial of a Crim.R. 29 motion is the same as the inquiry for sufficiency [of the evidence]. To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all of the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Neeley (2001), 143 Ohio App.3d 606, 619, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in State v. Smith, supra.
 {¶ 16} Citing Cincinnati v. Alexander (1978),54 Ohio St.2d 248, and State v. Coppock (1995), 103 Ohio App.3d 405, appellant asserts that the state was required to prove that Dellabonna both (1) observed the speeding offense within his jurisdiction, and (2) began his pursuit of the van within his jurisdictional limits. At trial, the state failed to elicit testimony from Dellabonna regarding precisely where he observed the van speeding, or precisely where Dellabonna activated his lights and siren indicating the driver to stop. Dellabonna testified that he was positioned for radar surveillance on Angola Road, next to the I 475 overpass, between Holland-Sylvania and McCord Roads; however, it was not established that Dellabonna was positioned within Holland limits or whether appellant was seen speeding inside Holland limits. Appellant also points to R.C.2935.03(D), which permits a police officer to pursue a suspect into another jurisdiction and detain or arrest the suspect there, but which also requires the police officer to have initiated the pursuit within his authorized jurisdictional limits.
 {¶ 17} An appellate court may take judicial notice of jurisdictional limits. State v. Liccardi (1924),18 Ohio App. 118. This occurs most frequently for venue purposes. State v.Giles, 322 N.E.2d 362 (Ohio App. 1974). "Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant. State v. Draggo (1981), 65 Ohio St.2d 88, 90. The standard of proof is beyond a reasonable doubt, although venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case.State v. Dickerson (1907), 77 Ohio St. 34, paragraph one of the syllabus." State v. Headley (1983), 6 Ohio St.3d 475, 477. However, appellant raises the issue in support of his argument that the verdict is against the manifest weight of the evidence because no evidence establishes 1) that the initial speeding violation occurred within Holland and 2) Dellabonna's pursuit began in Holland, both required by R.C. 2935.03(D).
 {¶ 18} Like venue, Dellabonna's authority is established by the facts and circumstances. The I 475 overpass on Angola Road between Holland-Sylvania and McCord Roads was within his jurisdictional limits. We may take judicial notice of facts easily ascertainable from a reasonably reliable source, such as a map. "The judge may inform himself as to the facts of geography, such as the navigable character of a river, the distance between two points, or the location of a given place within the jurisdiction, by resort to * * * public documents, maps, etc."State v. Scott (1965), 3 Ohio App.2d 239, 243.
 {¶ 19} Appellate courts should not be disposed to encourage "lax methods" of establishing necessary facts, State v.Dickerson (1907), 77 Ohio St. 34, 56; however, the inference drawn from the evidence shows that as appellant was seen speeding eastbound on Angola Road, he must have been speeding as he exited Holland. Dellabonna testified that he witnessed the speeding while "running radar" at a location inside Holland limits. Appellant's argument regarding Dellabonna's authority to stop him for speeding is not well-taken. Also, precisely the same argument has been found "frivolous" when an appellant convicted of failure to comply did not argue that he did, in fact, comply with the officer's order, but challenged only the legality of the order itself and the officer had reasonable suspicion to attempt to stop. State v. Karle (2001), 144 Ohio App.3d 125, 134.
 {¶ 20} Appellant also notes what he terms various "identification issues" and points out, inter alia, that Dellabonna did not maintain sight of the van throughout the entire chase and that Dellabonna identified appellant as the escapee although the escapee was not photographed or fingerprinted. Upon review of the record, the manifest weight of the evidence supports the conclusion that appellant was the driver of the van and was also the escapee. Although the escapee may not have been fingerprinted or photographed at the Holland Police Station, Dellabonna did ask the escapee for his name and social security number and determined in whose name the van was registered. The jury did not "clearly lose its way" when it convicted appellant of both charges. Appellant's first and second assignments of error are therefore not well-taken.
 {¶ 21} We next address appellant's fourth assignment of error which alleges the prosecutor made improper prejudicial statements in his closing arguments. Because appellant failed to object at trial, he has waived all but plain error. Crim.R. 52(B). Plain error must fundamentally prejudice a defendant from receiving a fair trial. "When a court of appeals engages in a plain-error analysis, it must conduct a complete review of all relevant assignments of error in order to determine whether a manifest miscarriage of justice has occurred that clearly affected the outcome of the trial." State v. Hill (2001), 92 Ohio St.3d 191, syllabus. Error of this type must be "intrinsically harmful" to require reversal. Id. at 196.
 {¶ 22} In order for a prosecutor's statements during opening or closing arguments to be prejudicial to a criminal defendant, the defendant must show that the prosecutor went so far beyond "`the normal latitude allowed in closing arguments' that a fair trial was made impossible." State v. Maurer (1984),15 Ohio St.3d 239, 267, citing State v. Smith (1984), 14 Ohio St.3d 13. "In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." Id. at 266, citing, inter alia, State v. Papp (1978), 64 Ohio App.2d 203, 211. Moreover, "[c]onsiderable latitude is permitted in closing arguments, and the question is generally considered one falling in the first instance within the sound discretion of the trial court." State v. Pustare (1973), 33 Ohio App.2d 305, 312. Ultimately, the inquiry rests upon whether, absent the comments, the jury would still have found appellant guilty.
 {¶ 23} Appellant takes issue with the following: In closing arguments, the prosecutor characterized Dellabonna as "honest" and that Dellabonna's identification of appellant was reliable because of the "unique" and "unusual" tattoo on the escapee's neck; the prosecutor speculated that there was "screaming" and "chaos" inside the van because the two women passengers would have been "scared and desperate"; the prosecutor described the chase as "stunt driving" and stated that Dellabonna drew his weapon during the foot chase out of "concern for his safety." Appellant argues that each statement was contradicted by the evidence and the statements affected the outcome of his trial.
 {¶ 24} Reviewing the entire record and closing arguments, these statements could not have affected the outcome of the trial. The trial court admonished the jury several times of the axiomatic rule that closing statements are not evidence. Statev. Manago (1974), 38 Ohio St.2d 223, 227. Appellant's counsel also reiterated this rule several times during his closing statements. Appellee points to the prosecutor's clear framing of the passenger's circumstances inside the van as speculation on his part; also, those circumstances are not logically far-flung as the testimony indicated that the female passengers left the van so hastily both doors remained open as the driver continued to flee. The statements were clearly speculative, the jury was reminded that closing arguments are not evidence, and appellant's counsel amply compensated with similarly speculative remarks during his closing arguments. Appellant's fourth assignment of error is therefore not well-taken.
 {¶ 25} In his third assignment of error, appellant citesBlakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, for the proposition that his sentences violated his Sixth Amendment rights. In light of the recent decision of State v. Foster
(2006), ___ Ohio St.3d ___, 2006-Ohio-856, sentences imposed concurrently to each other pursuant to R.C. 2929.14(E) which are pending on direct appeal must be remanded for resentencing. Id. at ¶ 104. However, R.C. 2921.331(D)[1] mandates that any prison term imposed for a violation of R.C. 2921.331(C)(5) be imposed consecutively to any other prison term imposed. Thus, it was not necessary for the trial court to follow R.C. 2929.14(E) when imposing consecutive sentences. It was sufficient that the jury as the trier of fact found the condition of R.C.2921.331(C)(5)(a)(ii) met; namely, that appellant's "operation of the motor vehicle * * * caused a substantial risk of serious physical harm to persons or property." This jury finding is supported by the manifest weight of the evidence. Therefore, noBlakely or Foster violation occurred when the trial court imposed the prison term for failure to comply to run consecutively to the term imposed for escape. See, also, Statev. Whittsette, 8th Dist. No. 85478, 2005-Ohio-4824, ¶ 10-11, holding that trial court had no discretion to impose sentences other than consecutively; State v. Groves, 7th Dist. No. 853, 2002-Ohio-5245, ¶ 37, stating that findings pursuant to R.C.2929.14(E) are "immaterial" when consecutive sentences are mandatory pursuant to R.C. 2921.331(D). Appellant's third assignment of error is therefore not well-taken.
 {¶ 26} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Skow, J. concur.
[1] "If an offender is sentenced pursuant to division (C)(4) or (5) of this section for a violation of division (B) of this section, and if the offender is sentenced to a prison term for that violation, the offender shall serve the prison term consecutively to any other prison term or mandatory prison term imposed upon the offender." R.C. 2921.331(D).